UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NIKKOLAI ANDERSON,

                   Plaintiff,

       v.

MOTT STREET,

                  Defendant.

No. 20 C 07721

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nikkolai Anderson ("Anderson") sues her former employer, Mott Street, alleging she was subject to sexual harassment, discrimination on the basis of her sex, retaliation for complaining about the harassment and discrimination, and intentional infliction of emotional distress ("IIED"). Mott Street now moves for summary judgment on Anderson's claims. R. 57. For the following reasons, that motion is granted.

**I.  Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and

must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.     Failure to Comply with Local Rule 56.1

This District's Local Rule 56.1 requires each party opposing a summary judgment motion to file a response to the movant's Local Rule 56.1 Statement of Material Facts ("SOF"), either admitting, denying, or admitting/denying in part each numbered paragraph of the SOF. N.D. Ill. L.R. 56.1(b)(2). The Rule also provides that in its response, a party "may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." *Id.* § 56.1(e)(2). If the respondent desires for the Court to consider facts not set forth in the movant's SOF, the party is required to file a separate Statement of Additional Material Facts ("SOAF"). *Id.* § 56.1(b)(3). Here, in response to Mott Street's motion for summary judgment, Anderson filed a response to Mott Street's SOF that asserted additional facts, but failed to file a SOAF. Many of her denials also cite to evidence that does not actually controvert the fact or to her Complaint, which is not evidence. *See, e.g.*, R. 62 ¶ 36 (denying the fact that she used an iPad for personal reasons, citing to the

transcript of her own deposition, in which she instead stated she did "not remember the iPad situation"); *id.* ¶ 51 (discussing new facts regarding sexual harassment and citing only to the Complaint and a portion of Anderson's deposition which does not support the facts). And Anderson asserts facts not contained in the SOF throughout her response brief by citing directly to the record.

Anderson's failure to file a SOAF and her citations directly to the record to establish additional facts is a "serious violation of Local Rule 56.1" that has led courts in this district to disregard those additional facts in deciding the motion before it. *De v. City of Chicago*, 912 F. Supp. 2d 709, 715 (N.D. Ill. 2012) (disregarding additional facts asserted in response to SOF and not in a separate SOAF); *see also Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 644 (N.D. Ill. 2015) (collecting cases); *LaSalvia v. City of Evanston*, 806 F. Supp. 2d 1043, 1046 (N.D. Ill. 2011) ("The Court also disregards any citations to the record in the parties' legal memoranda that do not reference their Local Rule 56.1 Statements of Fact."). This Court should therefore disregard any additional facts to which Anderson cited in her brief and response to Mott Street's SOF, as well as those which are not supported by the evidence. But ultimately, it does not matter, because even if this Court considered Anderson's additional facts, Mott Street's motion must still be granted.

## III. Facts

Mott Street is a high-end Asian-fusion restaurant located in Chicago. R. 58 ¶ 1. It is co-owned by CEO Edward Kim ("Edward"), General Manager Nathaniel Chung ("Chung"), Jennifer Kim ("Jennifer"), and Victoria Kim ("Victoria"). *Id.* ¶ 2.

3

The restaurant's stated policies prohibit harassment or discrimination and encourage employees to bring such concerns to management without fear of retaliation. *Id.* ¶ 7.

Chung hired Anderson as a "host" in September 2015. *Id.* ¶ 11. Hosts are considered "Front of the House" ("FOTH") employees and primarily report to a "FOTH Manager" and Chung, as well as the other partners. *Id.* ¶¶ 8, 10. Hosts are typically the first employee to greet a guest and are expected by Mott Street management to make a good first impression and display a warm and welcoming demeanor. *Id.* ¶ 9. The FOTH handbook requires hosts to provide a "cheerful and gracious greeting/farewell," smile, make eye contact, use "positive body language," compliment guests, express appreciation, and follow a script when answering the phone in a friendly manner. *Id.* At some point, Anderson began serving as a "lead host" during busy shifts when multiple hosts were on duty due to her seniority. R. 69 ¶¶ 1–2.

During Anderson's employment, Chung alleges he observed Anderson being impatient, short, and cold with guests. R. 58 ¶ 16. Chung states that he repeatedly witnessed Anderson avoiding eye contact, failing to smile, not exchanging pleasantries with guests, and answering the phone with "Mott Street," instead of the script she was instructed to follow, which was, "Good afternoon, Mott Street, how may I help you?" *Id.* Chung also testified that he witnessed Anderson being edgy or unpleasant with guests which, at least once per month, escalated to the point where Chung would have to intervene and calm the guests down. *Id.* ¶ 17. Chung stated this never happened with any other host. *Id.* ¶ 18. Edward also stated that he witnessed Anderson display a "negative demeanor toward guests," curtly answer the

4

phone, and use an electronic device in front of customers. *Id.* ¶ 19. Victoria and Jennifer, who did not regularly work onsite at Mott Street, believed Anderson treated them "rude[ly]" when they came to dine on multiple occasions by answering their questions with one or two words and failing to smile or welcome them. *Id.* ¶¶ 20–22. Both Victoria and Jennifer reported their observations to Edward. *Id.* ¶¶ 21–22.

In November 2016, three guests posted reviews on Yelp which negatively mentioned a female host. *Id.* ¶ 24 ("Hostess was rude and snobby;" "[W]aiters are friendly. Hostess was not;" and "Instead of the host graciously placing us . . . she just pointed [and] said, 'here.' . . . [I]t was pretty weird and we were all in shock over the brash rudeness of it all."). Because negative Yelp and other online reviews can seriously impact business, and Mott Street generally enjoys positive reviews, Mott Street management immediately addresses negative reviews. *Id.* ¶¶ 23–24. Therefore, Chung reviewed the schedules and determined that Anderson was the host on duty the same day as the negative reviews. *Id.* ¶ 26. This, coupled with his own observations, led him to believe that the subject of the negative reviews was Anderson. *Id.* Bar Manager Mike Melazzo ("Melazzo"), who was often able to observe the host stand, sent an email to Chung relaying expectations for hosts, for example, "[s]imply gesturing at a guest with our hands is not acceptable, waving someone off, or speaking in a curt fashion is not acceptable." *Id.* ¶ 27. Shortly thereafter, Chung and Melazzo called a meeting with all hosts to discuss the points in Melazzo's email and to emphasize the importance of being friendly so that Mott Street could avoid future negative reviews. *Id.* ¶ 29.

But in spring and summer of 2017, Mott Street received four additional negative reviews that mentioned a rude female host. *Id.* ¶ 31 ("[T]he hostess was terrible. . . . She was rude, frazzled . . . ;" "I found the hostess to be rude. . . . She refused to make eye contact when we tried to approach her about sitting outside. She was very unfriendly . . . [and] made a snarky comment;" "Hostess was rude and not accommodating;" and "[W]hoever answered the phone today (hostess probably) was incredibly impatient and rude. When a guest calls . . . it's rude to cut them off on the phone and not try and help to figure out how long a wait time is."). Chung again matched Anderson's shifts to the dates of these reviews and determined she was most likely the host referenced in the reviews. *Id.* ¶ 32.

Chung further explains that Anderson was "insubordinate" on multiple occasions. For example, he stated that she repeatedly refused to enter her scheduling preferences in the correct manner, but then complained about her schedule.[1] *Id.* ¶ 33. She also repeatedly stored her bag and personal belongings at the host stand where they could be seen by guests and were in the way, despite being instructed not to do this (which Anderson denies). R. 58 ¶ 34; R. 62 ¶ 34. In early- to mid-August 2017, Chung saw Anderson use her phone for personal reasons in front of guests, which is not permitted. R. 58 ¶ 35. Then, on August 26, 2017, Chung observed Anderson use

---

[1] Anderson denies this in her response to the SOF, R. 62 ¶ 33, however, in an email, Anderson stated, "I don't use the app [to enter scheduling preferences] because I always have [the] same schedule . . . ." R. 62-4 at 2.

an iPad for personal reasons at the host stand, and as a result, Chung sent her home for insubordination.[2] *Id.* ¶¶ 36–37.

That same day, on August 26, 2017, Anderson sent an email to FOTH Manager Lola Olateju ("Olateju") labeled "Confidential" (the "August 26 email"). *Id.* ¶ 38. Most of the email contained her concerns relating to not receiving her scheduling preferences, not progressing, being "disrespected," and being sent home by Chung for using the iPad for personal reasons. *Id.* ¶¶ 36–37. It also stated:

> The work environment is extremely hostile, men at Mott St. do and say very inappropriate things which I find to be very disrespectful and uncomfortable. From my clothes to even me just following the Mott Rules, I get criticized. . . . I'm just sending this, because now it's a point where I feel unappreciated, dismissed, disrespected, degrading [sic] for women, unfairly treated, and torn down.

R. 62-4 at 2–3. The email was sent to Olateju only. *Id.* Chung and Edward allege they were not aware of the email until after Anderson's termination a month later. R. 58 ¶ 39.

Then, on September 20, 2017, Olateju forwarded an email to Chung containing yet another negative guest review about a female host:

> I honestly think the grumpy hostesses would have ruined my night if it were not for the incredible food and the incredible service we received once we (finally sat down). . . . Except for the shit-show that was the hostess station. I understand that it is a stressful job . . . . But holy shit,

---

[2] Anderson now denies she used the iPad for personal reasons in her response to the SOF. R. 62 ¶ 36. However, in the deposition testimony she cites to support her denial, she actually said she did not remember the incident. R. 62-2 at 51. And, in an email, she admitted she used the iPad to show her co-host an apartment, and she should not have done that on the clock. R. 62-2 at 2–3 ("Today while on the iPad I showed [a co-worker] the apartment that I was moving from and [Chung] came to the host stand and ask [sic] if I were on the . . . clock and that I shouldn't be doing that, which is fair.").

> you're the first point of contact for a customer and can't 1. [s]mile, [or] 2. [r]emember my name WHEN ITS LISTED ON A RESERVATION. . . . I was asked 5 different times who I was by the same hostess, sat 10 minutes late to a reservation. . . . [S]omeone tighten up the screws at the hostess booth and give them a lesson on customer service."

*Id.* ¶ 43. Chung once again determined that Anderson was the host on duty the day of the negative review. *Id.* ¶ 44. Olateju recommended to Chung that Anderson be terminated for her rudeness. *Id.* ¶ 42. Chung agreed and decided to terminate Anderson. *Id.* ¶ 45. The reasons for his decision were his own observations, repeated negative guest reviews, Anderson's insubordinate conduct, Olateju's recommendation, and Victoria's observations of Anderson. *Id.* Chung ran the decision by Edward, who had no objections, based on his own observations, the negative reviews, Chung's thoughts, and Jennifer's report to him of Anderson's rude demeanor. *Id.* ¶ 46. Therefore, on September 22, 2017, at about 3:00 p.m., Chung met with Anderson in his office and informed her that her employment with Mott Street was terminated.[3] *Id.* ¶ 47.

That same day, at 3:57 p.m., Anderson sent Olateju another email (the "September 22 email"), in which she complained about males mocking women for their menstrual cycles, making inappropriate gestures, and touching women, as well as "someone in management" telling Anderson "NOT to wear loose clothing," but to wear tight clothing. She concluded, "[g]ender matters at Mott St. and it shows with

---

[3] In her response to Mott Street's SOF, Anderson denies she was terminated at 3:00 p.m., and cites to her deposition transcript. R. 62 ¶ 47. That transcript reveals that Anderson thought it might have been later than 3:00 p.m., but she repeatedly stated she did not remember. R. 62-2 at 72–73.

the treatment of the ladies. Discriminated by gender and sexually harassed by men at Mott St. whether it be co-workers or guests with no protection." R. 58-4 at 78–79. No one else was copied on the email. Olateju forwarded it to Chung two days later, on September 24, 2017, with the caption, "I didn't see this until today! However, I wanted to pass this on. I find it to be a tad concerning on the timing." *Id.*

Mott Street alleges that, after Anderson's termination, the negative host reviews ceased, though Anderson has produced multiple (about seven) reviews since her termination that contain negative language about a host. R. 58 ¶ 50; R. 62 ¶ 50; R. 62-5. Mott Street states it was unaware of these reviews until Anderson attached them to her motion. R. 69 ¶¶ 3–6. Anderson's replacement was a female, and in the following year, nine of the ten hosts hired were female. R. 58 ¶ 5. Mott Street further alleges that it has fired other male FOTH employees who did not report any form of harassment or discrimination for similar reasons as Anderson: Jonathan Tribbey was terminated in 2020 for his negative demeanor and for being abrasive; Eric Blass was terminated in 2022 for being insubordinate; and Garrett Douthitt was terminated in 2018 for violating policies. *Id.* ¶ 68.

Anderson filed a Complaint with the Equal Employment Opportunity Commission and received a notice of right to sue. R. 1-1. She brought this lawsuit against Mott Street on December 24, 2020. R. 1. She complains of sexual harassment, discrimination based on her sex, retaliation, and IIED. Specifically, she claims that, during her employment at Mott Street, she experienced sexual harassment when a co-worker named Gabe Freeman and a customer touched her buttocks in separate

9

incidents and management did nothing, when she bickered with a server, when Melazzo called her a "bitch," and when Chung told her to not wear loose clothing.[4] She also claims that male employees were treated better than female employees and were not disciplined for tardiness or drinking on the job, but that female employees were. R. 62 ¶ 6. She argues that Mott Street's stated reasons for terminating her were a pretext because she never received a write-up or any form of progressive discipline prior to her termination, no one ever mentioned the negative reviews to her, and because she was promoted to lead host at some point in her employment. *Id.* ¶¶ 16–22, 26, 30, 32. She instead claims she was terminated because of her sex and in retaliation for sending the August 26 and September 22 emails to Olateju complaining of sexual harassment. *Id.* ¶ 60. Finally, she bases her IIED claim on the fact that, immediately prior to her termination, she had informed management that she was a rape victim, and that they were aware she was moving to a new apartment

---

[4] In her response to Mott Street's SOF, Anderson claims that "[m]ale co-workers and patrons of the restaurant touched, caressed, and squeezed Plaintiff's body in ways that were offensive, unwanted, and sexually harassing; . . . Restaurant patrons and co-workers regularly referred to Plaintiff as a bitch; . . . Restaurant patrons and co-workers would regularly rub their hands on Plaintiff and touch her waist, breasts, or buttocks without her consent and in a sexually offensive manner; . . . Male co-workers regularly made lewd and offensive statements to Plaintiff; . . . Male employees requested sex or sexual acts from Plaintiff which were offensive, unwanted, and sexually harassing." R. 62 ¶ 51. But the only evidentiary support for these claims that she cites is her own testimony that the male employees "all talked about sex" at work. R. 68-2 at 40. She instead cites to her allegations in her Complaint to support these claims. But "[a]llegations in a complaint are not evidence," *Nisenbaum v. Milwaukee Cty.*, 333 F.3d 804, 810 (7th Cir. 2003), and therefore cannot be cited to support a motion for summary judgment. *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999) (Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.").

and needed the income from her employment but terminated her for no reason. *Id.* ¶ 66.

## Analysis

### I.    Sexual Harassment Claim

Plaintiffs alleging a theory of sexual harassment based on a hostile work environment under Title VII face a "high bar" to establish actionable conduct. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). "Merely offensive conduct does not give rise to liability, for 'Title VII is not a civility code.'" *Enriquez v. U.S. Cellular Corp.*, No. 06 C 3135, 2008 WL 4925012, at *9 (N.D. Ill. Nov. 14, 2008) (quoting *Patton v. Keystone RV Co.*, 455 F.3d 812, 815 (7th Cir. 2006)). To establish a case, the harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (explaining that "relatively isolated instances of non-severe misconduct will not support a claim of a hostile environment"). "In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975–76 (7th Cir. 2004). In order to analyze the severity or pervasiveness of the conduct, a plaintiff must come forward with specific facts; vague non-specific testimony will not do. *See Brooks v. Avancez*, 39 F.4th 424, 442 (7th Cir. 2022).

Here, besides vague and unspecified claims that women were not "treated right" at Mott Street, Anderson has identified four instances over a two-year period that she alleges were harassment directed at her. She claims that coworker Gabe Freeman touched her buttocks once; she bickered with coworker Simon DuFour ("DuFour"); Melazzo called her a "bitch;" and Chung told her once that she "shouldn't wear loose clothing."[5] In each instance, Anderson states she made pleas to management that were dismissed. But these instances, even taken together over two years, were non-serious and isolated and therefore not actionable. *Mercer v. Cook Cty.*, 527 F. App'x 515, 521 (7th Cir. 2013) ("[B]oorish or offensive stray remarks," like being called a "bitch," and isolated touching are not "severe or pervasive."); *Patton*, 455 F.3d at 816 ("[M]ore crude physical acts . . . [such as] a pinch of the buttocks—may be considered insufficiently abusive to be described as 'severe' when they occur in isolation.") (citations omitted).

Perhaps acknowledging the weakness of her claim, Anderson expends little effort refuting Mott Street's arguments, cites to her Complaint (which is not evidence, *Nisenbaum*, 333 F.3d at 810), and does not distinguish or address any of Mott Street's case law or cite to any authority of her own. She does not claim, for example, that she was unable to do her job because of the harassment. On the other hand, Mott Street points to plentiful examples in this Circuit of dismissal of harassment claims based

---

[5] She also alleges a customer touched her buttocks on one occasion and that customers disrespected her, but Mott Street "is not vicariously liable for the sexual harassment of its employee by a customer." *Equal Emp't Opportunity Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 627 (7th Cir. 2018).

on similar or more serious conduct than Anderson experienced. *See, e.g.*, *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 464 (7th Cir. 2002) (two instances of unsolicited back rubs and a uniform inspection during which a supervisor stared at the employee's chest and asked her to raise her arms did not constitute harassment); *Adusumilli v. City of Chi.*, 164 F.3d 353, 361 (7th Cir. 1998) (teasing, comments about low-neck tops, staring, and four incidents in which a co-worker briefly touched an employee's arm, fingers, or buttocks were not severe or pervasive enough to be actionable). Because Anderson has not provided sufficient evidence of harassment that is objectively so severe or pervasive to constitute an abusive working environment, her sexual harassment claim must be dismissed.

## II. Discrimination and Retaliation Claims

Anderson's discrimination and retaliation claims are similarly meritless. When a plaintiff alleges that she suffered adverse employment actions because of a protected characteristic the "central question at issue is whether the employer acted on account of the plaintiff's race (or sex, disability, age, etc.)." *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013). "Employers are also prohibited under Title VII from retaliating against an employee who 'filed a complaint or participated in an investigation of an unlawful employment practice.'" *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020) (citing 42 U.S.C. § 2000e-3(a)). On summary judgment, "the correct standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or

13

other proscribed factor caused the . . . adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

One way in which a plaintiff can proceed is through the now-familiar *McDonnell Douglas* burden-shifting framework, under which she first must establish a prima facie case of discrimination. *See Volling v. Kurtz Paramed. Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (*McDonnell Douglas* is a "common, but not exclusive" method to establish a "triable issue of intentional discrimination."). To demonstrate a prima facie case of discrimination or retaliation under *McDonnell Douglas*, a plaintiff generally must show: (1) that she is a member of a protected class or engaged in protected activity; (2) that she was performing her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that similarly situated individuals who were outside her protected class or did not engage in protected activity were treated more favorably. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Once established, the employer then presents evidence of a non-discriminatory reason for its decision, and the burden ultimately shifts back to the plaintiff to establish that the employer's reason is pretextual. *Id.*

But ultimately, and regardless of the method of proof used, all evidence is placed "in a single pile," and the question is "whether the evidence would permit a reasonable factfinder to conclude that [the plaintiff's] [protected class or activity] caused" the adverse action. *Ortiz*, 834 F.3d at 765–66. As to Anderson's discrimination and retaliation claims, the Court finds that the answer is no.

**a. Discrimination Claim**

In arguing that her discrimination claim should survive summary judgment, Anderson relies exclusively on the *McDonnell Douglas* framework. Mott Street does not challenge that Anderson, a female, is part of a protected class, nor that she experienced an adverse employment action when she was terminated. Rather, it contests that Anderson has not pointed to a similarly situated male employee, otherwise called a "comparator," who was treated more favorably. It likewise argues that Anderson was not meeting expectations, and that she can present no evidence of pretext.

### i. Similarly Situated Employees

To establish that others outside the plaintiff's protected class are adequate comparators, the plaintiff should at least show that the comparators "(1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (cleaned up). "Although similarly situated employees 'need not be identical in every conceivable way,' they 'must be directly comparable to the plaintiff in all material respects.'" *Id.* (quoting *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009)).

Anderson points to DuFour and other unidentified male servers and bartenders who she claims were not written up or terminated for being tardy or drinking on the job, and claims that other unspecified female employees were

disciplined for the same behavior.[6] But Anderson herself was never disciplined for being late or drinking on the job, and she does not allege that DuFour was the subject of negative reviews, was observed being unfriendly to customers, or was insubordinate to his supervisors. In fact, Anderson admitted that she did not know of another Mott Street employee who had the same "track record" as her. R. 58-2 at 126.

On the other hand, Mott Street has provided evidence that male FOTH employees who reported to the same supervisors as Anderson were terminated when they engaged in similar wrongdoing as Anderson. *See* R. 58-5 ¶ 61 (Three male FOTH employees who reported to Chung were terminated for "having a negative demeanor and being combative," "being insubordinate," and violating the restaurant's cash policy.). Anderson has therefore failed to demonstrate that individuals outside her protected class received better treatment than she did. *Hanners v. Trent*, 674 F.3d 683, 692 (7th Cir. 2012) (employee who did not establish that comparators engaged in similar misconduct could not provide "circumstantial evidence" of discrimination). This dooms Anderson's attempt to make out a prima facie case of discrimination under *McDonnell Douglas*.[7]

---

[6] In her brief, Anderson claims that DuFour was treated more favorably with respect to "utilizing work equipment, scheduling, and performance expectations." R. 63 at 4. But the deposition transcript to which she cites does not support this claim. Rather, in the cited transcript, Anderson merely said, "Women weren't treated right at Mott Street. . . . [DuFour] was like, he could do no wrong. He could come in late . . . . But if any of us were late . . . we were in trouble, so to speak." R. 63-2 at 117–18, 125.

[7] Mott Street also contends that Anderson cannot establish a prima facie case of discrimination because she was not satisfactorily performing her job at the time of her termination. And it is for these same reasons that Anderson was terminated. Because the second prong of the *McDonnell Douglas* test—whether Anderson was meeting expectations by performing her job in a satisfactory manner—merges with

### ii. Pretext

Even if Anderson could make out a prima facie case of discrimination, she does not establish that Mott Street's stated reasons for her termination were a pretext for discrimination. Under the *McDonnell Douglas* pretext analysis, Mott Street must present evidence of non-discriminatory reasons for its termination of Anderson. To survive summary judgment, Anderson must then demonstrate that Mott Street's stated reasons are a pretext for discrimination. To establish a material issue of fact as to pretext, Anderson must show that "it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or [ ] that an employer's explanation is not credible." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006). But if Mott Street "honestly believed" its non-discriminatory reasons for the adverse employment action, even if the reasons were "foolish, trivial, or baseless," Anderson loses. *Coleman v. Donahue*, 667 F.3d 835, 853 (7th Cir. 2012) (quoting *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006)).

Mott Street has offered legitimate, non-discriminatory reasons for terminating Anderson: Chung and Edward, the decision makers who ultimately agreed to terminate Anderson, believed Anderson was insubordinate and rude to customers based on their own observations, guest complaints, and the reports of other employees and managers. Indeed, all four owners of Mott Street claim they independently

---

the issue of pretext, the Court should assume Anderson established a prima facie case and instead consider Mott Street's argument in the context of the pretext analysis. *Curry v. Menard, Inc.*, 270 F.3d 473, 477–78 (7th Cir. 2001) (citing *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 (7th Cir. 1999)).

observed Anderson being rude, curtly answering the phone, avoiding eye contact, and displaying a cold demeanor. Then, throughout late 2016 and 2017, Mott Street received eight negative guest reviews about a rude female host. Chung determined these complaints to be about Anderson based on the days she worked and his own observations. Further, according to Chung, Anderson was insubordinate by failing to enter her scheduling preferences into the correct software, storing her personal belongings at the host stand, and repeatedly using electronic devices for personal reasons in front of guests. The final straw, according to Mott Street, was when FOTH manager Olateju forwarded to Chung the eighth negative review which she attributed to Anderson and recommended she be terminated.

Anderson disputes that she was rude or short with guests, that she was insubordinate, or that the negative guest reviews are attributable to her. But Anderson's perception of her own performance is inconsequential. The proper inquiry looks at whether Mott Street honestly believed it had a legitimate basis for termination. *See, e.g.*, *Lauth v. Covance, Inc.*, 863 F.3d 708, 715–16 (7th Cir. 2017) ("Lauth's belief that he was performing his job adequately is not relevant to the question" of pretext). She also claims that Oleteju could not have recommended her termination because Olateju informed her that it was Chung who initiated the decision. But it is equally likely that Olateju did not want to admit to Anderson that she played a part in the decision.

Anderson also claims that Mott Street's disciplinary policy requires a worker to receive progressive discipline of a verbal warning, written warning, suspension,

and final warning prior to being fired, and that she never received any warnings prior to her termination. *See* R. 63-6 at 48. But the Mott Street handbook does not actually require progressive discipline. Instead, it lists out these potential forms of discipline depending on the severity of conduct, and states that first-time violations such as insubordination "may result in disciplinary action up to and including termination." *Id.* Absent a "rigorously enforced" progressive discipline policy, a failure to follow progressive discipline does not "suggest discrimination." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007) (when firm policy allowed for termination for some first-time offenses, failure to follow progressive discipline did not suggest discrimination). Anderson also speculates that the negative reviews could not have been about her, because if they were, the FOTH managers would have said something to her. But this is not based on any particular personal knowledge Anderson has of the FOTH managers' practices and is not enough to create a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience," (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991))).

Anderson further points to the fact that she received a promotion to lead host during her tenure. But it cannot be that if a person is promoted once, any subsequent termination is immediately suspect. What matters is the employer's belief about the

employee's performance at the time of termination. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991) (prior positive performance reviews did not contradict the employer's claim that the employee was not performing well at the time of his termination). Moreover, this argument undercuts her claim that she was discriminated against for her sex, because the same decisionmakers who hired and promoted her (knowing she was a woman) also terminated her. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013) ("[I]t is reasonable to assume that if a person was unbiased at Time A (when he decided to hire the plaintiff), he was also unbiased at Time B (when he fired the plaintiff).").

And finally, Anderson argues that Mott Street hosts have continued to receive negative reviews after her termination, and then speculates, without indicating the source of her knowledge, that none of those hosts have been fired for poor work performance or a negative demeanor. *See Payne*, 337 F.3d at 772. She also supplies no information about who the hosts were, whether they were female or male, whether any of the hosts received as many as eight negative reviews, or whether Chung or Edward knew about these reviews (they claim they did not, R. 69 ¶¶ 3–6).

In sum, Anderson has not presented evidence that would cause a reasonable factfinder to conclude that Anderson's sex caused her termination. *Ortiz*, 834 F.3d at 765–66 (the Court must consider the evidence of discrimination in a "single pile"). Mott Street is 50% woman-owned; women serve in management positions (including FOTH manager Olateju who recommended Anderson's termination); Anderson's replacement was a female; nine of ten hosts hired after her termination were female;

Anderson was hired and promoted by the same people who terminated her; Anderson can point to no similarly situated male employees who were treated more favorably than her; Mott Street provided examples of male employees who were fired for similar conduct; and Mott Street has put forth legitimate, non-discriminatory reasons for Anderson's termination. Therefore, Anderson's discrimination claim fails.

### b. Retaliation Claim

Anderson also claims that she was terminated because she reported discrimination and harassment in her August 26 email and reiterated her concerns in the September 22 email. It is Anderson's burden to establish the elements of retaliation, including a "protected activity," an adverse employment action, and a "causal connection" between the two. *Miller v. Polaris Labs., LLC*, 909 F.3d 858, 866 (7th Cir. 2015). The fundamental question is whether a reasonable trier of fact could infer retaliation occurred. *Id.*

In her brief opposing summary judgment, Anderson seems to base her retaliation claim primarily on the September 22 email, which contained specific complaints as to harassment, and which Anderson sent the same day she was terminated. Mott Street argues Anderson sent this email at 4:00 p.m., an hour *after* she was terminated, and retaliation claims require that the decisionmaker know about the protected activity *prior* to the termination. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 633 (7th Cir. 2020). Anderson argues there is a genuine issue of material fact as to whether she sent the September 22 email prior to her termination, and that this precludes summary judgment. But the only evidence she cites is her

deposition testimony in which she said she could not remember if she sent the email prior to her termination, R. 58-2 at 82, nor could she remember what time she was terminated. *Id.* at 71–73. Statements that Anderson could not remember certain things are not sufficient to create a genuine issue of material fact as to those things. But even assuming the email was sent prior to Anderson's termination, it does not seem that Chung, the decision maker, was aware of the email until two days post-termination. Anderson sent the email only to Olateju, and Chung received it when Olateju forwarded it to him two days later, on September 24, 2017. R. 58-4 at 78. The evidence therefore reveals that Chung, the decision maker, was not aware of the September 22 email when he terminated Anderson. *Kotaska*, 966 F.3d at 633 ("A valid retaliation claim requires that the decisionmaker know of the protected activity."). And notably, during Anderson's deposition, when asked whether she "believe[d] that [the September 22] email had anything to do with [her] termination," she answered "no," and stated that she thought she was terminated because of the August 26 email. *Id.* at 82.

The problem is that the August 26 email is not a protected activity. Anderson's August 26 email largely complained about scheduling concerns, advancement opportunities, and Chung's decision to send her home for using an iPad for personal reasons in front of customers. The only mention it made of gender-related concerns was when Anderson vaguely stated that she thought the work environment was "extremely hostile," and that "men at Mott St. do and say very inappropriate things which I find to be very disrespectful and uncomfortable." R. 62-4 at 2–3. Anderson

22

admitted in her deposition that there was nothing specific related to "harassment" or "discrimination" in the email. R. 58-2 at 70. And the language of the email is rather ambiguous, as it makes no mention of specific incidents of harassment or discrimination and does not allege her complaints were connected to her protected class. "[M]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class . . . is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *see also Woolner v. Flair Comms. Agency, Inc.*, No. 01 C 6043, 2004 WL 2032717, at *9–10 (N.D. Ill. Aug. 30, 2004) (holding that plaintiff's complaints to her supervisor that a co-worker touched her in a "sexually offensive manner," that the coworker's behavior was "worrisome," and that his "working style . . . was . . . aggressive and offensive," without mentioning specific details or incidents of the harassment, was not protected activity). Because a reasonable trier of fact would not infer that Anderson's termination was based on retaliation for the August 26 and September 22 emails, Anderson's retaliation claim also misses the mark.

## III.  IIED Claim

Anderson's IIED claim is based on her allegations that Mott Street knew she had recently been raped and that she needed the income to afford her rent but fired her for "no reason." This claim fails principally because it is time barred. The statute of limitations for IIED claims is two years. 735 ILCS 5/13-202. Anderson's employment with Mott Street was terminated on September 22, 2017, but she did not file her Complaint until December 24, 2020, over three years later. It is also

preempted by the Illinois Human Rights Act ("IHRA"), which preempts common law IIED claims that are "inextricably linked" to a civil rights violation, such as discrimination. *Davis v. Palos Health*, No. 18 C 4345, 2019 WL 214916, at *4 (N.D. Ill. Jan. 16, 2019). The same conduct—Mott Street's termination of Anderson—is the basis for both her discrimination and retaliation claims and her IIED claim. Accordingly, her IIED claim is preempted by the IHRA. The IIED claim also fails on the merits because "[i]n the employment context, a claim of IIED requires more than what is necessary to establish a claim of sexual harassment," and Anderson's sexual harassment claim itself did not pass muster. *Mazeika v. Architectural Specialty Prods., Inc.*, No. 05 C 415, 2005 WL 8179133, at *4 (N.D. Ill. July 26, 2005) (citations omitted) (collecting cases). Anderson's IIED claim thus meets a similar fate as her other claims.[8]

## CONCLUSION

For the foregoing reasons, Mott Street's motion for summary judgment (R. 57) is granted, and Anderson's case is dismissed with prejudice.

---

[8] Anderson failed to address any of Mott Street's arguments on her IIED claim, so her opposition waived. *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (A failure to oppose an argument "operates as a waiver.").

ENTERED:


Honorable Thomas M. Durkin
United States District Judge

Dated: August 14, 2023